UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In Re:

RL MANAGEMENT GROUP, LLC,            Case No. 13-51849
                                                        Chapter 11
       Debtor                                         Hon. Walter Shapero
_____/

RL MANAGEMENT GROUP, LLC,

       Plaintiff                                         Adv. Pro. No. 13-04843

v.

JACKSON COUNTY TREASURER KAREN COFFMAN,

       Defendant
_____/

## OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Due to a tax delinquency, the Jackson County Treasurer foreclosed prepetition upon three parcels of real estate owned by the Debtor. The Debtor subsequently filed this adversary proceeding to avoid that foreclosure as a preferential transfer pursuant to 11 U.S.C. § 547(b). The Treasurer filed the present motion for summary judgment, which the Court now grants.

### BACKGROUND

RL Management Group, LLC ("RL") owned the three subject parcels of real estate located in Jackson County, Michigan, apparently free and clear. Because of unpaid real estate taxes, Jackson County Treasurer Karen Coffman ("the Treasurer") filed a foreclosure complaint in the Jackson County Circuit Court ("the State Court") in early February 2013. RL did not

1

respond to the complaint and on February 20, 2013, the State Court entered judgment in favor of the Treasurer.[1] On April 25, 2013, the Treasurer recorded its interest. The Treasurer has apparently not yet auctioned the properties. On June 12, 2013, RL filed a voluntary Chapter 11 petition indicating a property tax debt to the Treasurer of $10,819.00.[2] RL's bankruptcy was dismissed on July 1, 2013 for failure to file certain documents, apparently as the result of a clerical error, and was reinstated on July 19, 2013.

RL now brings this adversary proceeding under 11 U.S.C. § 547(b) to avoid the Treasurer's foreclosure of the properties as a preferential transfer. This provision states:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made--
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if--
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Simply stated, RL argues that the Treasurer was a creditor who used the foreclosure proceeding to obtain the three properties, which are worth significantly more than the Treasurer was owed or what the Treasurer would have received in a Chapter 7 liquidation.

---

[1] The State Court complaint, judgment, and docket are not part of the present record but the referenced-to dates are not contested.

[2] RL has few other debts. It scheduled a separate debt of $23,959 fully secured by unrelated real estate and an unliquidated, disputed, and unsecured debt stemming from an alleged personal injury.

SUMMARY JUDGMENT STANDARD

Fed.R.Civ.P. 56 provides the statutory basis for summary judgment, and is made applicable to adversary proceedings via Fed.R.Bankr.P. 7056. "Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Kalamazoo River Study Group v. Rockwell Intern. Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Id. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis original). "There is no genuine issue of material fact when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Williams v. Leatherwood, 258 Fed. Appx. 817, 820 (6th Cir. 2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

DISCUSSION

I. Whether the Transfer in Question Took Place Within 90 Days of the Petition Date

The state statute governing foreclosure by the Treasurer provides in relevant part:

> The circuit court shall enter final judgment on a petition for foreclosure filed under section 78h at any time after the hearing under this section but not later than the March 30 immediately succeeding the hearing with the judgment effective on the March 31 immediately succeeding the hearing for uncontested cases or 10 days after the conclusion of the hearing for contested cases. All redemption rights to the property expire on the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case 21 days after the entry of a judgment foreclosing the property under this section. The circuit court's judgment shall specify all of the following:

(a) The legal description and, if known, the street address of the property foreclosed and the forfeited unpaid delinquent taxes, interest, penalties, and fees due on each parcel of property.

(b) <u>That fee simple title to property foreclosed by the judgment will vest absolutely in the foreclosing governmental unit</u>, except as otherwise provided in subdivisions (c) and (e), without any further rights of redemption, <u>if all forfeited delinquent taxes, interest, penalties, and fees are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section</u>, or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section.

Mich. Comp. Laws § 211.78k(5) (emphasis added). The proceedings in this case and their operative results under the applicable statute, read in light of that statute's plain language, can be summarized as follows:

1. Commencement of tax foreclosure proceeding in State Court: early February 2013
2. Uncontested State Court hearing held and judgment of foreclosure entered: February 20, 2013
3. Effective date of said judgment: March 31, 2013
4. Expiration of RL's right of redemption: March 31, 2013
5. Vesting of the Treasurer's fee simple title to the foreclosed properties: March 31, 2013

The Treasurer initially contends that the "transfer" in question did not take place within the 90 day period required by § 547(b)(4)(A), arguing that the clock began running on February 20, 2013, the date of the State Court's judgment of foreclosure. RL argues that the pertinent date should be March 31, 2013, the date that its right of redemption expired by operation of law, or alternatively, April 25, 2013, the date the Treasurer recorded its interest. "Transfer" is defined by § 101(54) to mean:

(a) the creation of a lien;
(b) the retention of title as a security interest;
(c) the foreclosure of a debtor's equity of redemption; or
(d) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--
    (i) property; or
    (ii) an interest in property.

For the purposes of this matter, the Court concludes that the March 31, 2013 date is the correct date of the subject transfer, i.e. the date when RL's redemption rights and title were extinguished and, coincidentally, when the Treasurer obtained fee simple title by operation of law. The Court is not persuaded by the Treasurer's argument that the dismissal and subsequent reinstatement of RL's bankruptcy had any effect on the 90 day requirement. The Treasurer viewing the July 19, 2013 date of reinstatement as the pertinent date (as opposed to the June 12, 2013 original date of filing) is inappropriate because § 547(b)(4)(A) states the transfer must be made "on or within 90 days before <u>the date of the filing of the petition</u>" (emphasis added). Thus, the subject transfer took place within the 90 day period before RL's bankruptcy filing.

## II. <u>Whether RL has Complied with the Pleading Requirements</u>

Although this motion is styled as a motion for summary judgment, the Treasurer argues that it is entitled to "dismissal" of this adversary proceeding and frames this as an argument regarding RL's insufficient pleading, citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). Those cases hold that in order to survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), not a motion for summary judgment, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). The Treasurer's motion confuses the motion to dismiss standard and the summary judgment analysis. The Treasurer first argues that RL's complaint fails to meet this pleading requirement because its complaint is a formulaic recitation of § 547(b). Specifically, the Treasurer points to the fact that paragraph 11 of the complaint states:

> Plaintiff is informed and believes and, on that basis alleges thereon, that the Pre-Petition Transfers enabled the Defendant to receive more than the Defendant

> would have received if (a) the Debtor's bankruptcy case were a case under chapter 7 of title 11 of the United States Code; (b) the respective transfers had not been made; and (c) the Defendant received payment of such debt to the extent provided by title 11 of the United States Code.

The Court reads this argument to be more appropriately based on a Fed.R.Civ.P. 12(b)(6) motion to dismiss and will analyze it by that standard. The distinction does not affect the outcome.

The mere fact that the above-quoted count paraphrases the statutory language of § 547(b) is not itself grounds for dismissal. Although the complaint itself does not have specific dollar figures to support the assertion that the Treasurer received more than it would have received in a Chapter 7 liquidation, RL's bankruptcy petition indicates that it owed the Treasurer $10,819.00 and RL's response to the Treasurer's motion includes documentation indicating that the combined assessed value of the three properties was $44,550. The record is thus clear that RL states a plausible argument that the over-secured Treasurer, by obtaining title to the subject properties, received more than it would have in a Chapter 7 liquidation. The Court is not persuaded by the Treasurer's references to In re Crescent Resources, LLC, 2012 WL 195528 (Bankr. W.D. Tex. 2012) (finding the complaint deficient because it failed to describe the relationship between the debtor-transferor and the transferee, which is necessary to establish that the transfer related to an antecedent debt). RL's complaint, read in the appropriate light and with reasonable inferences, is in conformity with the above-noted pleading standard and survives a motion to dismiss.

### III. Whether the Subject Tax Foreclosure Can be Avoided as a Preference

The Treasurer also argues that it is entitled to "dismissal" because applicable substantive law precludes the avoidance of a valid tax foreclosure such as this. It argues that, even if RL was allowed to amend its complaint, its case would be futile as a matter of law. Although the

6

Treasurer's position is again framed as a motion to dismiss, the Court finds it more properly analyzed under the summary judgment standard. The distinction does not affect the outcome.

RL brings this avoidance action essentially on the basis that the Treasurer received a windfall by foreclosing on properties worth significantly more than the property tax debts thereon. RL asserts that such a windfall would frustrate its attempt to reorganize and would result in an inequitable treatment of creditors.[3] The Treasurer argues that the foreclosure transfer cannot be avoided in light of BFP v. Resolution Trust Corp., 511 U.S. 531, 114 S. Ct. 1757 (1994). That case did not deal with a § 547 preference action. Rather, it dealt with a § 548 fraudulent transfer action.[4] The Supreme Court there held that "reasonably equivalent value," as stated in § 548, is conclusively established by a valid mortgage foreclosure sale that complies with applicable state law requirements. In so holding, the Court refused to define "reasonably

---

[3] After this Court took this matter under advisement, RL proposed a Chapter 11 plan that contemplates recovery of the three subject properties and a reorganization involving rental income derived from said properties.

[4] Section 548, as worded when BFP was decided, stated:

> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>
> (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation....

BFP, 511 U.S. at 535 n.2.

equivalent value" as fair market value or reasonable forced-sale price. Id. at 547. BFP can be differentiated because § 547 does not contain the requirement "less than a reasonably equivalent value," but rather only focuses on whether the creditor received "more" than it would have under a Chapter 7 liquidation. The BFP Court did specifically say "We emphasize that our opinion today covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." Id. at 537 n. 3. Thus, the BFP Court was being careful not to extend its holding there to different issues and statutory provisions not before it and what may or may not be other considerations in cases involving foreclosures of tax liens, such as this. Arguably, the language "more than such creditor would receive if the case were a case under chapter 7" contained in § 547(b)(5) may well be seen as more favorable to RL's position here, but only if that literal wording was the only and abiding determinant of the issue. In deciding BFP, the Supreme Court also stated:

> It is beyond question that an essential state interest is at issue here: We have said that "the general welfare of society is involved in the security of the titles to real estate" and the power to ensure that security "inheres in the very nature of [state] government." American Land Co. v. Zeiss, 219 U.S. 47, 60, 31 S.Ct. 200, 204, 55 L.Ed. 82 (1911). Nor is there any doubt that the interpretation urged by petitioner would have a profound effect upon that interest: The title of every piece of realty purchased at foreclosure would be under a federally created cloud.

Id. at 544 (bracketed text in original).

Bankruptcy courts have split as to whether § 547 can be used to avoid a prepetition mortgage foreclosure as a preferential transfer. Several cases hold that such transfers are avoidable: In re Andrews, 262 B.R. 299 (Bankr. M.D. Pa. 2001); In re Whittle Dev., Inc., 463 B.R. 796 (Bankr. N.D. Tex. 2011); In re Berley Assoc., Ltd., 492 B.R. 433 (Bankr. D.N.J. 2013); In re Villarreal, 413 B.R. 633 (Bankr. S.D. Tex. 2009); In re Rambo, 297 B.R. 418 (Bankr. E.D. Pa. 2003). Some of those courts distinguished BFP's policy issues and focused on the plain

language of § 547. Other courts have taken the opposite approach, finding <u>BFP</u> to be equally applicable in the § 547 context and holding that such transfers are not avoidable: <u>In re Pulcini</u>, 261 B.R. 836 (Bankr. W.D. Pa. 2001); <u>In re FIBSA Forwarding, Inc.</u>, 230 B.R. 334 (Bankr. S.D. Tex. 1999) aff'd, 244 B.R. 94 (S.D. Tex. 1999); <u>In re Cottrell</u>, 213 B.R. 378 (Bankr. M.D. Ala. 1996).

The Michigan General Property Tax Act, Mich. Comp. Laws § 211.1 *et seq.*, "reflect[s] a legislative effort to provide finality to foreclosure judgments and to quickly return property to the tax rolls." <u>Barry County Treas. v. Klinge</u>, 2013 WL 85902, *2 (Mich. App. 2013) (quoting <u>In re Treasurer of Wayne Co. for Foreclosure</u>, 478 Mich. 1, 4 (2007)) appeal denied, 825 N.W.2d 586 (Mich. 2013). Michigan's former real estate tax foreclosure scheme, originally enacted in 1893 and amended numerous times, was commented upon as follows:

> Michigan's scheme for foreclosing real property tax liens is a particularly complex process that has resulted in unfortunate and unintended consequences. Because of the long period of time between the initial delinquency and the eventual foreclosure and resale of property, abandoned properties tend to deteriorate or be vandalized and become eyesores, if not outright hazards, to surrounding neighborhoods. In addition, increased due process requirements have made the process more complex, while decreasing the confidence that a purchaser may have in the quality of a title conveyed by a quit-claim deed given by the state of Michigan upon sale of tax-reverted parcels.

Kevin T. Smith, <u>Foreclosure of Real Property Tax Liens</u>, 75 Mich. B.J. 953 (Sept. 1996). In 1999, the Michigan Legislature almost entirely rewrote the law on tax foreclosures to remedy these problems. <u>AAA Invest v. Taylor</u>, 2007 WL 1201884 (Mich. App. 2007); Kevin T. Smith, <u>An Update on Foreclosure of Real Property Tax Liens Under Michigan's New Tax Foreclosure Process</u>, 36 Mich. Real Prop. Rev. 30 (2009). It did so based upon the following findings:

> The legislature finds that there exists in this state a continuing need to strengthen and revitalize the economy of this state and its municipalities by encouraging the efficient and expeditious return to productive use of property returned for

delinquent taxes. Therefore, the powers granted in this act relating to the return of property for delinquent taxes constitute the performance by this state or a political subdivision of this state of essential public purposes and functions.

Mich. Comp. Laws § 211.78(1). The Legislature empowered foreclosing government units to take absolute title, notwithstanding any competing liens. Mich. Comp. Laws § 211.78k(5).

This is a case involving a property tax lien foreclosure, not a mortgage foreclosure. If the former may not, at least in some instances, be as ubiquitous as the latter, it is sufficiently universal as to conclude there clearly is an "essential state interest" at issue here and one of importance to the financial health and well-being of taxing government units and their citizens. That state law interest, relative to the mortgage involved in BFP, is more encompassing and replete with the ramifications to the security of real estate titles that so greatly concerned the Supreme Court. In this Court's opinion, the ramifications here are more fundamental and of greater importance. The taxes involved are the lifeblood of government units and enable them to carry out essential government functions for the benefit of their citizens. In the event of a tax delinquency, these government units should be able to foreclose on the subject property and promptly return it to the tax rolls without being subject to what the Supreme Court called "a federally created cloud." Were it otherwise, a government unit that is empowered by applicable state law to foreclose on realty because of unpaid property taxes would be at risk of seeing the delinquent taxpayer file bankruptcy and call the foreclosure judgment into question. The effect of such would be to allow those properties to fall into disrepair and to impose on the government unit a substantial period of uncertainty of title. Such complications and delays would result in the exact problems that Michigan's statutory foreclosure scheme sought to remedy. In this Court's view, this poses an undue and improper burden on governmental units and the essential functions they conduct for the benefit of their citizens. The articulated state interest outweighs

what might be a somewhat literal but inappropriate application of § 547, and should be seen as an overarching policy consideration dictating the result in this situation.

In BFP, The Supreme Court also specifically made clear that in order for federal statutes to impinge upon important interests that are traditionally within state authority, such displacement must result from a clear and manifest federal statutory purpose. BFP, 511 at 544. This Court finds no such clear and manifest purpose for which federal bankruptcy law should be construed or applied to interfere with property tax foreclosures, which are traditionally a state matter, at least in the context of the type of proceeding involved in this case. Put differently, at least in such a case as this, to hold otherwise would impermissibly expand the reach of bankruptcy law at the expense of what this Court concludes are predominant state and local law and interests. As noted, this Court would not be alone in doing so. See In re Pulcini, 261 B.R. at 844-45; In re FIBSA Forwarding, Inc., 230 B.R. at 341. Accordingly, the Treasurer's motion for summary judgment is granted and it should present an appropriate order under the applicable local rule.

**Signed on January 10, 2014**

                                           **/s/ Walter Shapero**
                                       **Walter Shapero**
                                       **United States Bankruptcy Judge**